# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TERENCE C. PRIESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CAROLINA COMMUNITY | ) | 1:20CV1102 |
| SUPPORT SERVICES, INC., | ) | |
| ERICA LOCKLEAR, and | ) | |
| NYESHA ROBINSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon a partial motion to dismiss by Defendants Carolina Community Support Services, Inc. ("CCSS"), Erica Locklear, and Nyesha Robinson ("Defendants"). (Docket Entry 8.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss the following three claims raised by Plaintiff's complaint: 1) hostile work environment based on sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 2) wrongful termination in violation of public policy; and 3) tortious interference with an employment contract. (*Id.* at 1.) Plaintiff filed a response. (Docket Entries 12, 13.) Defendants did not file a reply. For the following reasons, the undersigned will recommend granting in part and denying in part Defendants' motion to dismiss.

1

## I. FACTUAL ALLEGATIONS

Plaintiff filed his complaint on December 9, 2020 against his former employer, CCSS, its Program Director Nyesha Robinson, and CCSS Director of Operations Erica Locklear. (*See generally* Compl., Docket Entry 1.) Plaintiff's complaint raises ten causes of action, including claims for: retaliation and hostile work environment based on sexual harassment in violation of Title VII; violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*; violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1 *et seq.*; wrongful termination in violation of the due process clause of the Fourteenth Amendment of the United States Constitution; and other North Carolina state law claims. (*See generally id.*)

In summary, Plaintiff alleges that in January 2019 a coworker (Ms. Davis) disclosed to him that she and another coworker (Mr. Holden) were engaged in a sexual relationship. (*Id.* at 3.) Plaintiff set up a meeting with CCSS CEO Oswald Nwogbo, apparently to express his concerns about the relationship between Mr. Holden and Ms. Davis.[1] (*Id.*) Defendants Robinson and Locklear were both informed about the meeting to take place between Plaintiff and Mr. Nwogbo. (*Id.*) That same day, Mr. Holden called Plaintiff to confront and intimidate him for reporting the sexual relationship to the CCSS officers. (*Id.*) Plaintiff's meeting with Mr. Nwogbo was cancelled, but Plaintiff was instructed to meet with Defendants Robinson and Locklear the following day. (*Id.*)

---

[1] In later allegations, Plaintiff states that there was an intimate sexual relationship between Mr. Holden and Defendant Robinson. (*See* Compl. at 1.) This relationship between these two individuals is mentioned again in Plaintiff's response brief. (*See* Docket Entry 13 at 11.) From the complaint, the undersigned is unable to determine whether Mr. Holden was engaged in a relationship with two different co-workers or if the mention of Ms. Davis was merely an error. (*See* Compl. at 1.)

According to Plaintiff, on or around January 16, 2019, he met with Defendants Robinson and Locklear. (*Id.* at 4.) At the meeting, Defendant Robinson accused Plaintiff of spreading false information about other employees, demoted him, instructed him not to come to the office in the future, and "threatened to take out a restraining order against [him]." (*Id.*) Following the meeting, Plaintiff noticed that he had lost access to his clients in the company's management system. (*Id.*) Plaintiff informed Mr. Nwogbo and Defendants Robinson and Locklear about the problem. (*Id.*)

On or around January 18, 2019, Plaintiff met with Mr. Nwogbo to discuss these matters. (*Id.* at 5.) Mr. Nwogbo requested five days to further investigate Plaintiff's allegations. (*Id.*) On January 26, 2019, Plaintiff received notification that his credentials and pay rate had been lowered in the human resources system. (*Id.*) Plaintiff alleges that "[Defendant] Robinson and/or Mr. Holden changed this information in the system which could have resulted in payroll errors and system billing errors." (*Id.*) Plaintiff contacted Defendant Locklear, who corrected the error. (*Id.*)

Around the same time, Plaintiff received a letter from Mr. Nwogbo informing him that his demotion had been reversed. (*Id.* at 6.) However, Plaintiff's supervisory access was not reinstated, which resulted in Plaintiff performing uncompensated supervisory duties. (*Id.*) In February 2019, Defendants Locklear and Robinson made further accusations against Plaintiff. (*Id.*) Specifically, on February 7, 2019, Defendant Locklear accused Plaintiff of "submitting fraudulent notes" and billing a client who had not received services. (*Id.*) In response, Plaintiff emailed Defendant Locklear proof of the services he provided to the client. (*Id.*) On February 27, 2019, Defendant Robinson accused Plaintiff of failing to attend a mandatory staff meeting.

(*Id.*)  Plaintiff emailed the CCSS management to inform them that he had been excused from the meeting due to a previously scheduled appointment.  (*Id.*)

In April 2019, the CCSS management team "provided a new contract agreement to staff."  (*Id.*)  Plaintiff informed Defendant Locklear that he needed time for his attorney to review the contract prior to signing it but was warned that he would not be able to work until the contract was signed.  (*Id.* at 6-7.)  Defendant Locklear again accused Plaintiff of billing a client who had not received services.  (*Id.* at 7.)  The client came to the CCSS office and explained to Defendant Robinson that she had made so such complaint against Plaintiff.  (*Id.*)

Plaintiff alleges that the "hostile workplace harassment" perpetuated by Defendants Locklear and Robinson persisted over the course of several months.  (*Id.* at 8.)  Plaintiff alleges that "his notes were scrutinized and under heavy surveillance[, h]is clients were contacted weekly[,] and he received errors in his pay."  (*Id.* at 7.)  Additionally, Plaintiff alleges that his wife (also a CCSS employee) suffered lost wages.  (*Id.* at 8.)  In response, Plaintiff filed claims against Defendants with the North Carolina Department of Labor's ("NCDOL") Wage and Hour Bureau and with the U.S. Department of Labor ("DOL") Wage and Hour Division on July 9, 2019 and August 3, 2019, respectively.  (*Id.*)

Plaintiff alleges that Defendant Locklear took further retaliatory measures against him.  (*Id.*)  On August 29, 2019 Defendant Locklear "removed Plaintiff's clients from the system[,] and he was unable to bill for them which affected his pay."  (*Id.*)  Defendant Locklear then sent Plaintiff "an inappropriate picture of her legs," and apparently called Plaintiff into private meetings on several occasions "which were supposed to be work related but were not work related."  (*Id.*)  On October 9, 2019, Defendant Locklear locked Plaintiff out of his emails and

4

the company billing system, such that he could not enter his hours or case notes. (*Id.* at 9.) Finally, Defendant Locklear "informed Plaintiff that she was ending his work contract due to [his] making errors on documentation." (*Id.*)

Following this encounter, Plaintiff made several attempts to inform Defendant Locklear and Mr. Nwogbo that he was owed $870 in unpaid wages. (*Id.*) In December 2019, the NCDOL determined "that CCSS owed Plaintiff approximately $900 for unpaid wages owed [and that NCDOL was] closing the case and allowing the DOL to continue [its] investigation." (*Id.*) Pursuant to its investigation, the DOL determined that Defendant CCSS had misclassified Plaintiff's employee status such that Plaintiff was owed $17,600 in unpaid wages. (*Id.* at 10.) CCSS issued Plaintiff a partial payment of $9,500 following the DOL investigation, but Plaintiff alleges that this amount did not include compensation for overtime wages, retaliation damages, or liquidated damages. (*Id.*) Plaintiff filed a charge of "employment discrimination on the basis of race and retaliation" with the EEOC on April 3, 2020. (*Id.* at 2.) The EEOC issued him a right to sue letter on September 11, 2020. (*Id.*)

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's claims for hostile work environment based on sexual harassment, wrongful termination, and tortious interference with an employment contract pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 8 at 1.) A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555 (internal citations omitted). "Rule 12(b)(6)

does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. <u>Plaintiff's Title VII sexual harassment claim</u>

Count Two of Plaintiff's complaint raises a claim for hostile work environment based on sexual harassment in violation of Title VII, apparently against all Defendants. (*See* Compl. at 11 ("Plaintiff is entitled to recover from Defendants . . . .").) According to Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e(b). "The Fourth Circuit has clearly held that supervisors . . . are not liable 'in their individual capacities for Title VII violations.'" *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 720 (W.D.N.C. 2012) (quoting *Lissau v. Southern Food Serv.*, 159 F.3d 177, 180–81 (4th Cir. 1998)); *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 760 (M.D.N.C. 2018) ("Title VII . . . authorizes claims against an employer, but not against non-employers or supervisors.") (citing 42 U.S.C. § 2000e–(2)(a)(1)); *Mayes v. Moore*, 419 F. Supp. 2d 775, 779 (M.D.N.C. 2006) ("Within this circuit, individual supervisors, unless they are otherwise an employer under the statute, are not liable for Title VII claims."). Thus, as an initial matter, to the extent that Plaintiff attempted to raise this claim against Defendants Locklear and Robinson in their individual capacities, such a claim necessarily fails. Plaintiff has not alleged

7

facts that would qualify Defendants Locklear and Robinson as employers as under Title VII. (*See* Compl. at 1-2, 13 (alleging that Defendants Locklear and Robinson are employees of Defendant CCSS and "were co-workers and supervisors of Plaintiff").) *See also Alexander v. Diversified Ace Servs. II,* AJV, No. 1:11CV725, 2014 WL 502496, at *7 (M.D.N.C. Feb. 7, 2014). In fact, in his response brief Plaintiff concedes that Defendants Locklear and Robinson are not his employers and clarifies that this claim is not brought against them as individuals. (*See* Docket Entry 13 at 10.) Therefore, Plaintiff's claim, as he acknowledges, may only be cognizable against Defendant CCSS as his employer.

"Because 'an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action,' for sexual harassment." *Vincent v. N. Carolina Dep't of Transportation*, No. 1:20CV51, 2020 WL 5710710, at *7 (M.D.N.C. Sept. 24, 2020) (citing *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)). "To establish a hostile work environment based on sexual harassment under this provision, a plaintiff-employee must prove that (1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." *Crockett v. Mission Hosp., Inc.,* 717 F.3d 348, 354 (4th Cir. 2013).

Defendants contend that Plaintiff's claim fails at the third element of this test because the conduct described in his complaint is not severe or pervasive enough to create an abusive work environment. (*See* Docket Entry 9 at 5-8.) "The determination of whether conduct is severe or pervasive is both subjective and objective." *High v. R & R Transportation, Inc.,* 242 F. Supp. 3d 433, 443 (M.D.N.C. 2017) (citing *EEOC v. Cent. Wholesalers, Inc.,* 573 F.3d 167, 175

(4th Cir. 2009)). Therefore, a plaintiff "must show that he did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Cent Wholesalers*, 573 F.3d at 175. Thus, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "To determine whether harassment is sufficiently severe or pervasive to create an objectively hostile and abusive work environment, courts must consider the totality of the circumstances including: '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance.'" *High,* 242 F. Supp. 3d at 443 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)).

The undersigned agrees with Defendants that Plaintiff has not alleged facts sufficient to state a claim for sexual harassment because the conduct Plaintiff points to was not severe or pervasive enough to create an objectively hostile work environment. Here, along with the allegations summarized above, the additional facts supporting Plaintiff's claim for sexual harassment are limited to the following:

    i.    Plaintiff is a male and Defendants Locklear and Robinson are female. (Compl. at 11.)

    ii.    Defendant Locklear made "unwanted advances towards Plaintiff" by sending him "a picture of her legs and calling him into private meetings unrelated to work." (*Id.*)

    iii.    "Plaintiff made it clear that [Defendant Locklear's] conduct was unwelcomed by making several complaints and reports." (*Id.*)

9

iv. "[Defendant] Locklear was in a position of authority over Plaintiff and was the employee who terminated Plaintiff." (*Id.*)[2]

First, Plaintiff's allegations do not indicate that the harassing conduct was frequent. He describes a single incident in which Defendant Locklear sent him a photograph of her legs. *See Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 277 (4th Cir. 2015) ("[A] single act of harassment may not be actionable on its own" unless the act is "extremely serious."); *Coleman v. Pentagon Fed. Credit Union*, No. 1:17-CV-18 (LMB/IDD), 2017 WL 1044693, at *3 (E.D. Va. Mar. 17, 2017) (holding that "[a] single incident of unwelcome touching does not amount to" severe and pervasive conduct). Beyond the photograph, Plaintiff vaguely mentions being called to other "private meetings" with Defendant Locklear but does not describe how many of these meetings took place or how often they occurred.

Second, the alleged sexual harassment cannot be characterized as severe. While receiving a photo one's boss's legs might be uncomfortable or awkward, legs are not pornography, and courts have held that the display of photos of a much more explicitly sexual nature by an employee's supervisor does not constitute sexual harassment. *See Lutz v. Purdue Univ.*, 133 F. Supp. 2d 1101, 1106 (N.D. Ind. 2001) ("Pictures of a sexual nature do not rise to the level of sexual harassment."); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 977 (7th Cir.2000) (finding no sexual harassment where employer showed employee a book with pictures of women in bondage and black leather). Nor has Plaintiff alleged that the

---

[2] Plaintiff also makes the following legal conclusions: 1) Defendant Locklear's conduct was unwelcome and based on Plaintiff's sex; 2) Defendant Locklear's conduct was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment;" and 3) Defendant Locklear's "behavior was imputable to Defendant [CCSS] as Mr. Nwogbo failed to take effective remedial action against the hostile work environment created by Ms. Robinson and Ms. Locklear." (*Id.*)

10

photograph was accompanied by any physical touching, threat, proposition, or other sexually explicit message that would increase the severity of the incident. *See, e.g., Moore v. Cricket Commc'ns, Inc.,* 764 F. Supp. 2d 853, 858 (S.D. Tex. 2011) (finding at summary judgment that plaintiff's supervisor created a hostile work environment by making explicit statements on several occasions "about his body and his sexual habits and desires" and displaying a nude photograph of himself to plaintiff). Regarding the private meetings, Plaintiff provides no details about the contents of the conversations between himself and Defendant Locklear, other than saying they were "unrelated to work." (Compl. at 11.) As Defendant properly point out, from the face of the complaint "it is impossible to deduce that these conversations were anything more than innocuous office banter." (Docket Entry 9 at 7.) Without more, the undersigned cannot conclude that there was anything inherently sexual or harassing about these meetings.[3]

Third, Plaintiff makes no allegation that Defendant Locklear's actions were physically threatening, nor, beyond labeling them as "unwelcome," does he allege that he found them to be humiliating or offensive. Finally, there are no specific factual allegations that the receipt of the photograph of Defendant Locklear's legs and the private meetings with her interfered with Plaintiff's work performance.[4] Thus, the undersigned finds that the alleged conduct by

---

[3] The undersigned acknowledges that the Fourth Circuit has held that "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor." *Boyer-Liberto*, 786 F.3d at 278 ("Simply put a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.") (internal quotation and citation omitted). However, the status of the harasser is only one factor to be considered in assessing the severity of a plaintiff's allegations of sexual harassment, and here, Defendant Locklear's position of authority over Plaintiff does not alter the result above.

[4] Plaintiff merely makes the legal conclusion that Defendant Locklear's "conduct was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an

11

Defendant Locklear falls short of conduct sufficient to state a claim for hostile work environment based on sexual harassment.

Plaintiff's arguments to the contrary are not convincing. Plaintiff points to "two triggering incidents" that amount to severe and pervasive harassment. (*See* Docket Entry 13 at 8.) One of these "triggering incidents" is Plaintiff's receipt of the photograph of Defendant Locklear's legs. The undersigned has already determined that this incident as described by Plaintiff was not severe enough to establish a sexual harassment claim. The second incident Plaintiff points to is CEO Nwogbo's failure to remedy "the atmosphere of inappropriate sexual influence and harassment in the workplace." (*Id.*) Plaintiff alleges that Mr. Nwogbo was negligent in failing to curtail the behavior of Mr. Holden (apparently referring to the sexual relationship between him and a female coworker)[5] and Defendant Locklear, both of whose conduct Plaintiff reported to the CEO. (*Id.*)

In certain situations, and based on agency principles, an employer may be held vicariously liable for the harassing conduct of an employee's supervisor. *See Burlington Industries,*

---

abusive work environment." (Compl. at 11.) While the complaint certainly alleges that Defendant Locklear interfered with Plaintiff's ability to complete his work by, for example, accusing him of billing for services not provided and restricting his access to his clients and emails (*see* Compl. at 6-7, 9), these allegations are not "based on the plaintiff's sex," and thus do not figure into the analysis of Plaintiff's sexual harassment claim. *Crockett,* 717 F.3d at 354.

[5] The alleged sexual relationship between Plaintiff's coworkers does not further Plaintiff's attempt to establish his own hostile work environment claim based on sexual harassment. While incidents of sexual harassment "directed at others and not the plaintiff . . . do have some relevance in demonstrating the existence of a hostile work environment," *Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1144 (7th Cir. 1997), there has been no allegation that the relationship between coworkers Mr. Holden and Ms. Davis (or Defendant Robinson) was anything other than consensual. If the sexual contact between these two individuals was not "unwelcome," it does not constitute an incident of sexual harassment for purposes of a Title VII claim. *See Crockett,* 717 F.3d at 354; *Campbell v. Masten*, 955 F. Supp. 526, 529 (D. Md. 1997) ("The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome.") (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) (internal quotation omitted)).

*Inc. v. Ellerth,* 524 U.S. 742, 764-65 (1998). Liability will not be imputed on an employer who "exercises reasonable care to prevent and correct any harassing behavior where a plaintiff unreasonably fails to take advantage of the preventative or corrective opportunities offered." *Moser v. MCC Outdoor, L.L.C.*, 630 F. Supp. 2d 614, 616 (M.D.N.C. 2009) (citing *Ellerth*, 524 U.S. at 765). Therefore, a negligent failure by Mr. Nwogbo to prevent and correct harassing behavior by Plaintiff's supervisors would be relevant to Plaintiff's ability to establish the fourth prong of his claim. *See Crockett,* 717 F.3d at 354 (fourth element of four-part test for a hostile work environment based on sexual harassment claim concerns whether the harassment is "imputable on some factual basis to the employer"). However, the Court need not reach this inquiry because, as explained above, Plaintiff has failed to establish the third element of this test, which requires that the underlying harassment be "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Id.* Therefore, the undersigned recommends granting Defendants' motion to dismiss Plaintiff's claim for a hostile work environment based on sexual harassment.

### B. Plaintiff's state law wrongful termination claim

Count Seven of Plaintiff's complaint purports to raise a state law claim for wrongful termination in violation of public policy against sexual harassment against Defendants. (*See* Compl. at 15 ("Plaintiff is entitled to recover from Defendants . . . .").) At the outset the undersigned notes again that such a claim cannot be brought against Defendants Locklear and Robinson as individuals. *See Gibson v. Corning Inc.,* No. 5:14-CV-105-BO, 2015 WL 1880188, at *4 (E.D.N.C. Apr. 13, 2015) ("[A] claim for wrongful discharge under North Carolina law cannot be brought against an individual—a plaintiff may only bring suit against his employer

13

for wrongful discharge."); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 726 (W.D.N.C. 2012) ("Pursuant to established North Carolina law, 'a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents (such as coworkers and supervisors).'") (quoting *Sampson v. Leonard*, No. 4:10–121, 2011 WL 129634, at *3 (E.D.N.C. Jan. 12, 2011)). As noted above, in his response brief, Plaintiff concedes that Defendants Locklear and Robinson are not his employers and clarifies that he only intended to raise this claim against Defendant CCSS as his employer. (*See* Docket Entry 13 at 10.)

"To state a claim for wrongful discharge in violation of public policy, an employee 'has the burden of pleading . . . that [his] dismissal occurred for a reason that violates public policy." *Wilkes v. Argueta*, No. 1:16CV260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (ellipses in original) (quoting *Salter v. E & J Healthcare, Inc.*, 575 S.E.2d 46, 51 (N.C. Ct. App. 2003)). North Carolina courts have held that "the right to be free of sexual harassment in the workplace . . . is implicated in our State declaration of public policy." *Guthrie v. Conroy*, 567 S.E.2d 403, 407 (N.C. Ct. App. 2002). Indeed, the North Carolina's Equal Employment Practices Act ("NCEEPA") provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex." N.C. Gen. Stat. § 143-422.2.

First, the factual allegations underlying Plaintiff's NCEEPA wrongful discharge claim do not explain how his termination occurred for a reason that violates North Carolina public policy against sexual harassment, which it is his burden to do. (*See* Compl. at 15.) Nor is it apparent from the general factual allegations in his complaint that the alleged incidents of sexual harassment had any bearing on his discharge. (*Id.* at 3-10.) On the contrary, Defendant

14

Locklear's stated reason for firing Plaintiff was that he made errors in billing records. (*Id.* at 9.) To the extent that the factual allegations underlying Plaintiff's NCEEPA claim can be read to allege wrongful termination in response to the "complaints and reports" he allegedly made regarding Defendant Locklear's sexually harassing conduct, such retaliation cannot form the basis of a cognizable NCEEPA claim because "North Carolina has no written public policy . . . with respect to retaliation for opposing sexual discrimination in the workplace." *Efird v. Riley*, 342 F. Supp. 2d 413, 428 (M.D.N.C. 2004); *see also Wilkes v. Argueta*, No. 1:16CV260, 2017 WL 1215749, at *9 (M.D.N.C. Mar. 31, 2017) ("While North Carolina has an express public policy against sexual discrimination, including sexual harassment, North Carolina does not have a public policy regarding retaliation for opposing sexual discrimination."); *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997) ("There is no North Carolina state law support for Plaintiff's assertion that a retaliatory discharge arising from complaints of sexual harassment violates the public policy of North Carolina.").

Second, because the undersigned has already determined that Plaintiff's Title VII sexual harassment claim should be dismissed, his NCEEPA wrongful discharge claim based on sexual harassment should also be dismissed because North Carolina courts have repeatedly held that the two claims employ the same pleading standard. *See Carolina Dep't of Correction v. Gibson*, 301 S.E.2d 78, 85 (N.C. 1983) ("The ultimate purpose of G.S. 126–36, G.S. 143–422.2, and Title VII (42 U.S.C. 2000e, et seq.) is the same; that is, the elimination of discriminatory practices in employment . . . . We therefore adopt the evidentiary standards and principles of law [relating to Title VII claims] insofar as they are not in conflict with our statutes and case law."); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995); *Whitt v. Harris Teeter, Inc.*, 165 N.C. App.

15

32, 38, 598 S.E.2d 151, 155 (2004), *rev'd on other grounds*, 359 N.C. 625, 614 S.E.2d 531 (2005) (reiterating that G.S. 143–422.2 is "co-extensive with [Title VII], evaluated under the same standards of evidence and principles of law."; *see also Phillips v. J.P. Stevens & Co.*, 827 F. Supp. 349, 353 (M.D.N.C. 1993) ("Thus, since Plaintiff states a claim under Title VII, she states a claim for wrongful discharge in violation of the public policy expressed in N.C.G.S. § 143–422.2."); *Lingle v. Pain Relief Centers, P.A.*, No. 5:11-CV-168, 2013 WL 6732120, at *12 (W.D.N.C. Dec. 19, 2013) ("[Plaintiff] has presented sufficient facts to state a claim under Title VII, which is 'essentially identical' to the public policy expressed in N.C.G.S. § 143–422.1 *et. seq.* . . . As such, a genuine issue of material fact exists for [Plaintiff's] claim of wrongful discharge against [Defendant] to survive summary judgment.") (quoting *Phillips,* 827 F. Supp. 349 at 352-53). Because Plaintiff has made virtually identical allegations in support of both his Title VII and NCEEPA claims (*see* Compl. at 11, 15), for the reasons discussed above regarding his Title VII claim, his NCEEPA claim should also be dismissed.

### C. <u>Plaintiff's tortious interference with an employment contract claim</u>

Count Six of Plaintiff's complaint raises a claim for tortious interference with his employment contract in violation of North Carolina common law against Defendants Locklear and Robinson. (*See* Compl. at 13.) The four elements of a claim for tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

16

*Beverage Sys. of Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 462 (N.C. 2016) (quoting *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988)). Plaintiff has plausibly plead each of these elements insofar as Plaintiff has alleged that he was an employee of CCSS, that Defendants Locklear and Robinson were aware of his employment, and that they "intentionally interfered" with his work by restricting his access to clients and important billing software and making repeated false accusations about him. (Compl. at 3-10, 13.) Plaintiff alleges that he was "wrongfully terminated" and suffered damages as a result. (Compl. at 13.)

However, Defendants argue that as agents of CCSS, Defendants Locklear and Robinson cannot be liable because they "enjoy a qualified immunity to interfere [with Plaintiff's employment contract] as 'non-outsiders.'" (Docket Entry 9 at 10 (quoting *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 586 S.E.2d 507, 510 (N.C. Ct. App. 2003). Indeed,

> A non-outsider . . . enjoys immunity from liability "for inducing [his] corporation or other entity to breach its contract with an employee" unless "exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with[,]" *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992) (citations omitted). Thus, "a non-outsider has a qualified right to bring about the termination of another's terminable contract of employment when, in good faith, he believes this to be necessary to protect his own legitimate business interest or to perform his own fiduciary duty to the employer[.]" *Smith*, 289 N.C. at 88, 221 S.E.2d at 292-93 (emphasis in original) . . . . However, the conduct is not privileged or justified if the "officer's motives are improper[,]" *Embree Constr. Group, Inc. v. Rafcor*, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citations omitted), as when "his acts are performed in his own interest and adverse to that of his firm[,]" *Wilson*, 262 N.C. at 134, 136 S.E.2d at 578.

*Albright v. Charlotte-Mecklenburg Bd. of Educ.,* No. 317CV00461FDWDSC, 2017 WL 6028362, at *4 (W.D.N.C. Dec. 5, 2017) (alterations in original). In other words, Defendants Locklear and

17

Robinson are not entitled to immunity if Plaintiff "forecast[s] evidence that [they] acted with legal malice." *Hubbard v. N.C. State Univ.,* 789 S.E.2d 915, 922 (N.C. Ct. App. 2016). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* (internal quotation marks omitted); *see also Bloch v. The Paul Revere Life Ins. Co.,* 547 S.E.2d 51, 59 (N.C. Ct. App. 2001) ("Bad motive is the essence of a claim for tortious interference with contract."); *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 586 S.E.2d 507, 510 (N.C. Ct. App. 2003) ("[Q]ualified immunity is lost if the non-outsider acts with a wrongful purpose."). Defendants argue that "Plaintiff has not alleged that Locklear and Robinson acted with the malice necessary to overcome the qualified immunity they enjoy as a non-outsiders." (Docket Entry 9 at 10-11 (internal quotations and citation omitted).)

Because whether a defendant acted in good faith or had bad motives depends on the circumstances surrounding the alleged interference with the plaintiff's contract, "the question is often one of fact that cannot be resolved on a motion to dismiss." *Albright*, 2017 WL 6028362, at *5. Indeed, "allegations of 'facts demonstrating that defendants' actions were not prompted by 'legitimate business purposes' are sufficient at the pleading stage." *Id.* (citing *Embree*, 411 S.E.2d 916, 926 (N.C. 1992).

Here, Plaintiff has alleged that he was "wrongfully terminated" as a result of Defendants Locklear and Robinson "intentionally interfering" with his work, access to clients, and billing software. (Compl. at 13.) Though Plaintiff does not make specific allegations concerning Defendants Locklear and Robinson's motives (beyond alleging that their motivation in firing Plaintiff violated public policy (*see id.*)), based on the complaint as a whole,

18

the undersigned can plausibly infer that Defendants' actions toward Plaintiff (including false accusations, harassment, and retaliation) may have been taken in bad faith or prompted by improper motives.[6] *See generally Barker v. Kimberly-Clark Corp.,* 524 S.E.2d 821, 827 (N.C. 2000) ("[P]laintiff's forecast of evidence sufficiently raises the issue as to whether the motives of [Defendants] were reasonable, good faith attempts to protect their interests or the corporation's interests.") Moreover, though Plaintiff's allegations concerning legal malice are somewhat less developed than those plead by other plaintiffs whose tortious interference claims against a non-outsider have survived motions to dismiss in this Circuit, *see Herrmann Int'l, Inc. v. Herrmann Int'l Eur.,* No. 1:17-CV-00073-MR, 2021 WL 861712, at *18 (W.D.N.C. Mar. 8, 2021); *Wilkes v. Argueta*, No. 1:16CV260, 2017 WL 1215749, at *6 (M.D.N.C. Mar. 31, 2017); *Albright*, 2017 WL 6028362, at *5, at this early stage in the litigation and viewing the facts in the light most favorable to Plaintiff, the undersigned recommends that further factual development be allowed and that Plaintiff's claim against Defendants Locklear and Robinson not be dismissed on the basis of immunity. Thus, the undersigned recommends denying Defendants' motion to dismiss as to Plaintiff's claim for tortious interference with his employment contract.

## IV. CONCLUSION

**IT IS HEREBY RECOMMENDED** that Defendants' partial motion to dismiss (Docket Entry 8) be **GRANTED IN PART** at to Plaintiff's Second and Seventh Causes of

---

[6] In his response brief, Plaintiff argues that Defendant Robinson's "retaliation for Plaintiff's report of Ricky Holden's indiscretions was motivated by her own self-interests regarding her relationship with Mr. Holden." (Docket Entry 13 at 11.) However, no such articulation of Defendant Robinson's motivations appears on the face of the complaint. (*See generally* Compl.)

Action (hostile work environment based on sexual harassment in violation of Title VII and wrongful termination in violation of North Carolina public policy against sexual harassment) and **DENIED IN PART** as to Plaintiff's Sixth Cause of Action (tortious interference with an employment contract).

_____
Joe L. Webster
United States Magistrate Judge

June 8, 2021
Durham, North Carolina